IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEONARD RIVERA,

      Plaintiff,

v.                                            CIV 16-0048 RB/KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Plaintiff's Motion to Remand or

Reverse (*Docs. 21*), filed August 9, 2016. Pursuant to 28 U.S.C. § 636(b), this matter

has been referred to me for a recommended disposition. *Doc. 16.* Having reviewed the

parties' submissions, the relevant law, and the relevant portions of the Administrative

Record, the Court recommends that Plaintiff's Motion be denied.

## I.    **Procedural History**

This is Plaintiff's second appeal. Plaintiff initially filed applications with the Social

Security Administration for disability insurance benefits and supplemental security

income under Titles II and XVI of the Social Security Act on December 4, 2009. *AR* at

153, 160.[1] Plaintiff alleged a disability onset date of May 29, 2009, due to bulging and

ruptured discs, disc degeneration, and depression. *AR* at 196. These applications were

denied initially and upon reconsideration. *AR* at 76-79. Plaintiff requested review and,

after holding a *de novo* hearing, Administrative Law Judge ("ALJ") Michelle K. Lindsay

---

[1] Documents 10-1 through 10-25 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

issued an unfavorable decision on January 23, 2012. *AR* at 18-28. Plaintiff requested that the Appeals Council review ALJ Lindsay's decision on January 30, 2012. *AR* at 12. The Appeals Council denied Plaintiff's request for review of ALJ Lindsay's decision on July 5, 2013. *AR* at 1-3. As such, ALJ Lindsay's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

Plaintiff appealed ALJ Lindsay's decision to this Court. *AR* at 440-42. The Honorable William P. Lynch issued a decision reversing ALJ Lindsay's decision on February 6, 2014. *AR* at 444-64. Thereafter, the Appeals Council vacated ALJ Lindsay's decision on November 18, 2014. *AR* at 467-68. The Appeals Council noted that Plaintiff filed subsequent claims for DIWC and SSID on July 24, 2013; accordingly, these claims were consolidated with Plaintiff's pending claims. *AR* at 467.

On August 5, 2015, ALJ Deborah L. Rose held a second *de novo* hearing. *AR* at 374. After this hearing, ALJ Rose issued an unfavorable decision on November 18, 2015. *AR* at 345-65. The Appeals Council did not assume jurisdiction over the case, and so ALJ Rose's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.984, 416.1484. This Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility

for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

At Step One of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. *AR* at 347. At Step Two, she determined that Plaintiff had the severe impairment of "degenerative disc disease of the lumbar spine." *AR* at 347-351. At Step Three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the regulatory "listings." *AR* at 351-354.

When a claimant does not meet a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is a multidimensional description of the work-related abilities a plaintiff retains in spite of his medical impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In this case the ALJ determined that Plaintiff retained the RFC to

> Perform less than the full range of light, and sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) and 20 CFR 404.1567(a) and 416.967(a) with limitations as follows. The claimant is able to lift or carry up to ten pounds frequently and up to twenty pounds occasionally. He is able to stand or walk two hours per day, and sit for six hours daily. The claimant is only occasionally able to climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and he is never able to climb ladders, ropes or scaffolds. The claimant is able to have no more than occasional exposure to extreme cold, vibration, or hazards, such as dangerous moving machinery or unprotected heights. He must use a cane for all his standing and walking. The claimant would need to alternate between sitting and standing as needed, about every ten to thirty minutes.

*AR* at 354. Employing this RFC at Steps Four and Five, the ALJ determined that Plaintiff was unable to perform his past relevant work. *AR* at 362. However, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform; specifically, the ALJ determined that Plaintiff maintains the RFC to work as

a mail sorter, Dictionary of Occupational Titles ("DOT") No. 209.687.026, office helper,

DOT No. 239.567-010, or order clerk, DOT No. 209.567-014. *AR* at 364. Accordingly,

the ALJ determined that Plaintiff was not disabled from his alleged onset date through

the date of her decision, and denied benefits. *AR* at 365.

## II.    Legal Standard

This Court "review[s] the Commissioner's decision to determine whether the

factual findings are supported by substantial evidence and whether the correct legal

standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting

*Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is

grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

## III.   Analysis

Plaintiff raises a series of errors, all related to the ALJ's findings at Step Five.

### A)   *The ALJ did not misstate the burden of proof.*

Plaintiff's first argument is that the ALJ misstated the burden of proof at Step

Five. In this regard, the ALJ stated:

> At the last step of the sequential evaluation process (20 CFR 404.1520(g)
> and 416.920(g)), I must determine whether the claimant is able to do any
> other work considering his residual functional capacity, age, education,
> and work experience. If the claimant is able to do other work, he is not
> disabled. If the claimant is not able to do other work and meets the
> duration requirement, he is disabled. *Although the claimant generally
> continues to have the burden of proving disability at this step, a limited
> burden of going forward with the evidence shifts to the Social Security
> Administration.* In order to support a finding that an individual is not
> disabled at this step, the Social Security Administration is responsible for
> providing evidence that demonstrates that other work exists in significant
> numbers in the national economy that the claimant can do, given the
> residual functional capacity, age, education and work experience (20 CRF
> 404.1512(g), 404.1506(c), 416.912(g) and 416.960(c)).

*AR* at 347 (emphasis added). Plaintiff argues that the italicized language is in error, because, he contends, "the *entire* burden of proof shifts to the Commissioner and that 'the claimant has *no* burden at step five.'" *Doc. 22* at 9 (citations omitted).

The Court recognizes that judges in this district have been critical of this language in opinions in which they reversed the denial of benefits. *See Kuykendall v. Colvin*, CIV 13-0877 MV/WPL, *Doc. 27* at 19 (D.N.M. Jan. 26, 2015); *Martin v. Astrue*, CIV 10-0053 ACT, *Doc. 21* at 8 (D.N.M. Jan. 1, 2011); *Rivera v. Astrue*, CIV 10-0305 WDS, *Doc. 25* at 8 (D.N.M. Dec. 29, 2010); *Dominguez v. Astrue*, CIV 09-1012 ACT, *Doc. 25* at 9 (D.N.M. Sep. 29, 2010); *Thompson v. Astrue*, CIV 09-0063, RB/ACT, *Doc. 22* at 4 (D.N.M. Feb. 22, 2010). This criticism is based on language in an unpublished Tenth Circuit opinion stating that "[t]he claimant has no burden at step five." *Stewart v. Shalala*, 999 F.2d 548 at *1 (10th Cir. 1993) (unpublished table decision). However, none of these cases reversed and remanded an ALJ's decision merely for this statement, but for more substantial errors in the process. And there is no Tenth Circuit case, published or unpublished, that this Court is aware of reversing an ALJ on this ground alone.

Moreover, as the Commissioner points out, the ALJ's language is based on the Administration's interpretation of the sequential evaluation process as stated in 68 Fed. Reg. 51153-01. *Doc. 25* at 12. In this document, titled "Clarification of Rules Involving Residual Functional Capacity Assessments; Clarification of Use of Vocational Experts and Other Sources at Step 4 of the Sequential Evaluation Process; Incorporation of 'Special Profile' Into Regulations," the Commissioner states:

> Although you generally bear the burden of proving disability throughout the sequential evaluation process, there is a limited shift in the

burden of proof to us "only if the sequential evaluation process proceeds to the fifth step." *Bowen v. Yuckert*, [482 U.S. 137, 146 n.5 (1987)]. . . . When we decide that you are not disabled at step 5, this means that we have determined that there is other work you can do. To make this finding, we must provide evidence that demonstrates that jobs exist in significant numbers in the national economy that you can do, given your RFC, age, education, and work experience. In legal terms, this is a burden of production of evidence.

This burden shifts to us because, once you establish that you are unable to do any past relevant work, it would be unreasonable to require you to produce vocational evidence showing that there are no jobs in the national economy that you can perform, given your RFC. However, as stated by the Supreme Court, "It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, *id.* Thus, the only burden shift that occurs at step 5 is that we are required to prove that there is other work that you can do, given your RFC, age, education, and work experience. That shift does not place on us the burden of proving RFC.

Thus, we have a burden of proof even though our primary interest in the outcome of the claim is that it be decided correctly. As required by the Act, the ultimate burden of persuasion to prove disability, however, remains with you.

68 Fed. Reg. 51153-01, 2003 WL 22001943.

As stated by another judge in this district when considering this language, "[t]herefore the ALJ's statement has an established legal basis." *Jahn v. Astrue*, CIV 10-0771 RHS, *Doc. 28* at 10 (D.N.M. June 27, 2011). In fact, the regulations reflect the notion that while the Commissioner is responsible for providing evidence that the claimant can still work at Step Five, it remains the claimant's burden to prove the RFC that will be used at that step. As stated in the regulations:

In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors. We are not responsible for providing additional evidence about your residual functional capacity because we

will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.

20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). The Tenth Circuit has also explained that "the agency's burden at step five does not include the burden to provide medical evidence in support of an RFC assessment, unless the ALJ's duty to further develop the record is triggered." *See Howard v. Barnhart*, 370 F.3d 945, 948 (10th Cir. 2004). Therefore, the ALJ did not improperly shift the burden to Plaintiff at Step Five, and her statement that Plaintiff was still responsible for proving her disability at that step was not incorrect. *See Bustos v. Astrue*, CIV 10-0990 LAM, *Doc. 19* at 15-16 (D.N.M. Sept. 30, 2011). The Court will not reverse the ALJ on this ground.

### B) The ALJ's hypothetical corresponds with Plaintiff's RFC.

Plaintiff next argues that the "the hypothetical given to the VE [(Vocational Expert)] and the answers given do not match the RFC established by the ALJ with precision." *Doc. 22* at 10 (capitalization omitted). The Court disagrees.

"Whenever a claimant's residual functional capacity is diminished by both exertional and nonexertional impairments, the Secretary must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy." *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991). "[T]he hypothetical questions posed to the VE to assist with the step-five determination must reflect with precision all – and only – the impairments and limitations borne out by the evidentiary record." *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished) (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996)). A VE's response to a hypothetical question that meets this standard constitutes substantial evidence for an ALJ's disability decision. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

In this case the ALJ determined that Plaintiff maintains the RFC to perform less than the full range of light and sedentary work with the following restrictions:

> The claimant is able to lift or carry up to ten pounds frequently and up to twenty pounds occasionally. He is able to stand or walk two hours per day, and sit for six hours daily. The claimant is only occasionally able to climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and he is never able to climb ladders, ropes or scaffolds. The claimant is able to have no more than occasional exposure to extreme cold, vibration, or hazards, such as dangerous moving machinery or unprotected heights. He must use a cane for all his standing and walking. The claimant would need to alternate between sitting and standing as needed, about every ten to thirty minutes.

*AR* at 354.

When she questioned the VE at the hearing, the ALJ propounded the following hypothetical:

> If this individual could lift or carry up to 10 pounds frequently, up to 20 pounds occasionally; could stand or walk two hours per day; could sit six hours daily; could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; could have no more than occasional exposure to extreme cold, vibration, or hazards such as dangerous moving machinery or unprotected heights; and if he required the use of a cane for all standing and walking.

*AR* at 404. After discussing the ramifications of this hypothetical, the ALJ then asked:

> And if we added to hypothetical number one this individual would need to be able to alternate between sitting and standing as needed, and he testified that that would be every 10 to 30 minutes. Would these jobs allow for that option, to be performed either at the sitting level or the standing level?

*AR* at 409. In response, the VE testified that the hypothetical individual could perform three jobs: office helper, mail sorter, and order clerk, and that the number of these jobs within the economy would be reduced by 30% to accommodate this restriction. *AR* at 410-11.

Thus, "[t]he ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in [her] RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision." *See Qualls*, 206 F.3d at 1373.

Plaintiff argues that "both the VE and the ALJ lose sight of the entire RFC found, and fail to address the effect on the inability to use one hand during the times Plaintiff supports himself with his cane, while they focus just on the sitting and standing requirement." *Doc. 22* at 11. The hearing transcript belies this contention. As noted, the ALJ specifically included Plaintiff's need to use a cane in the first hypothetical to the VE. This limitation was not forgotten in the second hypothetical. Rather, the ALJ incorporated by reference those limitations stated in the first hypothetical when she "added" the sit stand option which was ultimately included in Plaintiff's RFC. In sum, the ALJ's hypothetical to the VE reflected the full extent of his limitations; there is no reversible error here.

### C) The VE's testimony was not unacceptably vague or confusing.

Plaintiff contends that the VE's testimony was vague and confusing, and for that reason, cannot constitute substantial evidence in support of the ALJ's decision. *Doc. 22* at 11-13. Plaintiff explains that "[o]nly after three opportunities does the VE include the order clerk, and reaches the three jobs eventually found by the ALJ." *Id.* at 13. Plaintiff therefore argues that "the three jobs found by the ALJ are established by this inconsistent testimony." *Id.* at 13. The Court agrees that the ALJ's questioning of the VE could have been clearer. However, the Court disagrees with Plaintiff's position that

merely because the VE's testimony was slightly confusing it cannot constitute substantial evidence on which the ALJ could rely.

In setting forth her first hypothetical, the ALJ asked the VE to assume an individual who, among other things, was limited to walking and standing to two hours per day, who could sit for six hours daily, and who required the use of a cane for all standing and walking. *AR* at 404. The VE testified that this hypothetical individual could not complete Plaintiff's past relevant work; however, after some clarification, the VE testified that there are other jobs that such an individual can perform. *AR* at 404-05. Specifically, the VE testified that the individual in hypothetical number one could perform the occupations of mail sorter, DOT number 209.687-026, office helper, DOT number 239.567-010, order clerk, DOT number 209.567-014, final assembler, DOT number 713.687-018, and charge account clerk, DOT number 205.367-014. *AR* at 406-09.

The ALJ then set forth a second hypothetical with an attendant follow-up question: "And if we added to hypothetical number one this individual would need to be able to alternate between sitting and standing as needed, and he testified that that would be every 10 to 30 minutes. Would these jobs allow for that option, to be performed either at the sitting level or the standing level?" *AR* at 409. The VE responded: "Depending on what the individual is doing for the office helper, that could be a possibility. However, if the individual is working on something that requires more standing or sitting, then that interruption would interfere with the job." *AR* at 409. The VE continued, "[t]he other jobs would not allow it." *AR* at 409. To clarify, the ALJ asked the VE: "So the mail sorter, the order clerk, final assembler, and charge account clerk would

not allow this alternating between sitting and standing?" *AR* at 409. The VE responded:

"The only one – the only addition would be the mail sorter, but the rest was (sic) not.

The other sedentary – the two other sedentary positions." *AR* at 410. The ALJ further

inquired: "Okay. So that I'm clear, which jobs can do this?" *AR* at 410. The VE

responded that the office helper, the mail sorter and the order clerk positions could

tolerate Plaintiff's need to sit or stand at will. *AR* at 410. The VE went on to testify,

however, that the need to alternate sitting or standing would reduce the number of

available jobs in these categories by thirty percent. *AR* at 410-11.

     While the VE's testimony could have been more clearly expressed, it establishes

the following observations: (1) Plaintiff cannot perform his past relevant work; (2) there

are a wide variety of jobs available to the first hypothetical individual that the ALJ

described; (3) however, only three of these jobs are available to a person with Plaintiff's

RFC, which limits him to positions that can accommodate sitting and standing at will;

and, (4) the number of available positions in these three jobs would be further reduced

by thirty percent due to the requirement of a sit/stand option. Plaintiff does not explain

why these conclusions, albeit presented in a somewhat confusing manner, cannot

constitute substantial evidence in support of the ALJ's decision. The Court will not

reverse the ALJ on this ground.

### *D) The ALJ's decision comported with* <u>Haddock</u> *and SSR 00-4P.*

     Plaintiff maintains that the ALJ's questioning, and the VE's responses, were

inconsistent with *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999),[2] and SSR 00-4P. In

*Haddock*, the Tenth Circuit held that an "ALJ must investigate and elicit a reasonable

---

[2] While Plaintiff refers to the case as *Haddock v. Astrue*, *Doc. 22* at 14, the Commissioner of the Social Security Administration was Kenneth Apfel when the *Haddock* decision was published. Accordingly, the case caption is *Haddock v. Apfel*, not *Astrue*.

explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock*, 196 F.3d at 1091. The Administration responded to *Haddock* by publishing SSR 00-4P, which explains the use of use of vocational expert and vocational specialist evidence, and other reliable occupational information, in disability decisions. *See* 2000 WL 1898704. Plaintiff argues that the ALJ's questions and the VE's responses ran afoul of these provisions for a number of reasons.

1. <u>The VE's testimony is substantial evidence in support of the thirty-percent reduction in available jobs due to the sit/stand requirement in Plaintiff's RFC.</u>

Plaintiff's first argues that the VE provided an "insufficient description of which jobs are actually identified and whether sufficiently probative for those jobs with the 30% reduction." *Doc. 22* at 15. Plaintiff then cites the portion of the VE's testimony where she states that there would be a thirty-percent reduction in the available jobs that would allow for the "possibility" of sitting and standing at will. *Id.* Plaintiff argues that "the record is unclear as to which jobs she is referring to on the 30% reduction since she testified both ways on the standing and sitting for each of the jobs." *Id.* Plaintiff also contends that "it is unclear as to whether she is saying that the sit/stand allowance was merely 'possible,' or whether she was testifying that it was more likely than not that the sit/stand option would be allowed." *Id.*

The Court finds nothing vague about the VE's testimony on this issue. The VE stated that the three jobs which would possibly accommodate the sit/stand requirement of Plaintiff's RFC would need to be reduced by thirty percent to take into account that accommodation. Contrary to Plaintiff's position, such testimony is precisely the sort of

"reasonable" or "valid" explanation that a VE can give when an identified job arguably conflicts with a claimant's RFC. *Haddock*, 196 F.3d at 1091-92 (describing a reasonable explanation as testimony that "a specified number or percentage or a particular job is performed at a lower RFC level than the Dictionary shows the job generally to require."); *see also* SSR 00-4P, 2000 WL 1898704 at *3 ("The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT."). Accordingly, the Court will not reverse the ALJ on this ground.

2. The ALJ properly relied upon the VE's estimate as to the reduction in the available number of jobs.

Plaintiff's next objects that the VE's decision to discount the available jobs by thirty percent "appears speculative" for, among other reasons, "the 30% figure was given as one common number for all three identified and different occupations." *Doc. 22* at 15. Thus, Plaintiff argues that the ALJ "failed to include the variety of loss of sitting and standing in the respective jobs." *Id.* at 16 (emphasis in original); *see also id.* at 18 ("The spontaneous 30% opinion, under the facts of this case, would seem to be the antithesis of the specificity required of standard vocational evidence in these cases.").

The number of available jobs in a particular category is not included within the DOT. Nor is there any indication of how a particular claimant's limitations would affect his or her ability to perform a particular type of work, or, as in this case, how a particular limitation might affect the number of jobs available. This is, at least in part, why the Administration relies on the experience and testimony of vocational experts and vocational specialists when making Step Five findings. *See* SSR 00-4P, 2000 WL

13

1898704 at *2 ("as provided in 20 CFR 404.1566(e) and 416.966(e), we use VEs and VSs as sources of occupational evidence in certain cases."); *see also* 20 C.F.R. §§ 404.1566(e), 416.966(e) (allowing for the use of VEs in disability determinations to determine the transferability of skills in a given occupation or in "similarly complex" issues). For this reason, "[e]vidence from VEs or VSs can include information not listed in the DOT." SSR 00-4P, 2000 WL 1898704 at *2. Rather, "[i]nformation about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling." *Id.*

"Providing this type of professional, experience-based evidence is precisely what reliance on evidence from a VE is meant to accomplish. The whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof." *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished) (citing *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993); 20 C.F.R. § 404.1566(e); SSR 00-4P at *2).

In support of his position that the VE's reduction of the number of jobs available to him was speculative, Plaintiff relies upon cases from the Seventh Circuit which are highly critical of VE testimony. *See Doc. 22* at 16-17 (citing and discussing *Hermann v. Colvin*, 772 F.3d 1110 (7th Cir. 2014); *Alaura v. Colvin*, 797 F.3d 503 (7th Cir. 2015); *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014); and *Hill v. Colvin*, 807 F.3d 862 (7th Cir. 2015)). The Court has reviewed these cases, but does not find them helpful in resolving this case for two reasons. First, the cases are not binding on this Court.

Second, the Tenth Circuit has not demonstrated the hostility towards VE testimony that drove the result in those cases.

In *Hermann*, for example, the Seventh Circuit rejected the VE's testimony about the number of available jobs because "he didn't explain how impressions from unspecified past experience and 'knowledge' could enable him to determine numbers of particular jobs. Nor did he reveal what surveys he had relied upon and what they had shown." *Hermann*, 772 F.3d at 1113. Accordingly, the Seventh Circuit reversed and remanded the case because "[n]othing in the record enable[d] [it] to verify those numbers, which the administrative law judge accepted." *Id.* at 1114.

Likewise in *Browning*, the Seventh Circuit expressed doubts about the "source or accuracy of the number of jobs that vocational experts . . . claim the plaintiff could perform that exist in the plaintiff's area, the region, or the nation." *Browning*, 766 F.3d at 709. "[M]ost serious" in the Court's opinion, "there are no credible statistics of the number of jobs doable in each job category by claimants like the plaintiff in this case who have 'limitations[.]'" *Id.*

In contrast, the Tenth Circuit has accepted without reservation VE testimony concerning the number, percentage and location of jobs within a claimant's capacity. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1331 (10th Cir. 1992).

In *Alaura*, the Seventh Circuit felt the need to "say something about the vocational expert's conclusion" based on its "concern with the source and validity of the statistics that vocational experts trot out in social security disability hearings[.]" *Alaura*, 797 F.3d at 507-08. The Court opined that the only reliable statistics for job numbers "are census data for broad categories of jobs, rather than for jobs in the narrower

categories that the applicant for benefits is capable of doing." *Id.* at 508. The court therefore opined that "[a] vocational expert's stated number of jobs in a narrow category seems likely . . . to be a fabrication." *Id.* Finally, in a concurrence in *Hill*, Judge Posner rejected the VE's testimony that based on his "own experience" the claimant could perform jobs with only one functioning limb because "he failed to describe the experience that formed his opinion[.]" *Hill*, 807 F.3d at 871. "In short," Judge Posner opined that "the vocational expert's testimony was worthless[.]" *Id.* at 872.

In contrast, the Tenth Circuit in *Trimiar* credited VE testimony concerning the ability of a claimant to work and travel long distances to assigned work, notwithstanding the limited function of the claimant's right hand. *Trimiar*, 966 F.2d at 1330-31. This included crediting testimony that indirectly established that persons with the claimant's impairments could perform the jobs identified by the VE. *See id.* at n.20. More recently, in *Rogers*, 312 F. App'x at 142, the Tenth Circuit affirmed a Step-Five finding as to the availability and number of jobs which relied upon a VE's "professional placement experience." *Id.*; *see also Holcom v. Barnhart*, 79 F. App'x 397, 399 (10th Cir. 2003) (unpublished) (accepting the testimony of a VE that the claimant could perform certain jobs "based on her thirty years of experience in observing [] jobs and placing people in these and other occupations").

In sum, while the Court takes note of the lack of confidence expressed by the Seventh Circuit towards VEs and the testimony they offer, Plaintiff has cited nothing indicating that the Tenth Circuit harbors these same reservations. To the contrary, the Tenth Circuit is incredibly deferential towards VE testimony so long as the ALJ complies with the mandates of *Haddock* and SSR 00-4p. "Indeed, what would be the point of

vocational testimony (or expert testimony in general) if it could not reach beyond matters already established through administrative (or judicial) notice?" *Gay*, 986 F.2d at 1340. The Court therefore rejects Plaintiff's argument that the VE's testimony concerning the thirty-percent reduction cannot constitute substantial evidence in support of the ALJ's decision.

3.   <u>There is no conflict with the DOT.</u>

Plaintiff argues that "the VE's job identification fails to match the requirement of 'frequent' handling and fingering in each of the three jobs" that the VE testified Plaintiff can perform. *Doc. 22* at 19. Plaintiff argues that his RFC is inconsistent with jobs requiring frequent bilateral handling and fingering because it contemplates the use of a cane for all standing and walking, as well as the need to sit and stand at will. *Id.*

Plaintiff's argument is based on the Selected Characteristics of Occupations ("SCO"),[3] which is the companion to the DOT. However, Plaintiff has not provided a citation to the SCO, and the Court was unable to locate "the tables" that Plaintiff relies on in his brief. The DOT entries for the jobs at issue confirm that handling and fingering are "frequent" activities of these jobs. *See* DOT No. 209.687-026, 1991 WL 671813; DOT No. 239.567-010, 1991 WL 672232; DOT No. 209.567-014, 1991 WL 671794. However, contrary to Plaintiff's assertion that "frequent" is defined as two-thirds of the day, the DOT defines "frequently" as 1/3 to 2/3 of the time. *See, e.g.*, DOT No. 209.687-026, 1991 WL 671813. Moreover, none of these positions explicitly require handling and fingering *bilaterally*.

---

[3] The SCO is incorrectly identified by Plaintiff as the "Specific Characteristics of Occupations." *Doc. 22* at 19.

Plaintiff contends that "[w]hile standing he would not be able to handle and finger while holding and supporting himself with a cane." *Doc. 22* at 19. However, Plaintiff does not explain why this is the case. True, it would be difficult for Plaintiff to bilaterally handle or finger anything when walking or standing and using his cane, but none of the jobs identified by the VE *require* bilateral handling and fingering, and many of the requirements of those jobs can be done one-handed, or during the time that Plaintiff is seated. *See* DOT No. 209.687.026,[4] DOT No. 239.567-010,[5] DOT No. 209.567-014.[6]

---

[4] According to the DOT, a Mail Sorter: "Sorts incoming mail for distribution and dispatches outgoing mail: Opens envelopes by hand or machine. Stamps date and time of receipt on incoming mail. Sorts mail according to destination and type, such as returned letters, adjustments, bills, orders, and payments. Readdresses undeliverable mail bearing incomplete or incorrect address. Examines outgoing mail for appearance and seals envelopes by hand or machine. Stamps outgoing mail by hand or with postage meter. May fold letters or circulars and insert in envelopes [FOLDING-MACHINE OPERATOR (clerical) 208.685-014]. May distribute and collect mail. May weigh mail to determine that postage is correct. May keep record of registered mail. May address mail, using addressing machine [ADDRESSING-MACHINE OPERATOR (clerical) 208.582-010]. May be designated according to type of mail handled as Mail Clerk, Bills (clerical)." 1991 WL 671813.

[5] According to the DOT, an Office Helper: "Performs any combination of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or timecards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments [DELIVERER, OUTSIDE (clerical) 230.663-010]. May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated Messenger, Office (clerical). May deliver stock certificates and bonds within and between stock brokerage offices and be designated Runner (financial)." 1991 WL 672232.

[6] According to the DOT, an Order Clerk: "Takes food and beverage orders over telephone or intercom system and records order on ticket: Records order and time received on ticket to ensure prompt service, using time-stamping device. Suggests menu items, and substitutions for items not available, and answers questions regarding food or service. Distributes order tickets or calls out order to kitchen employees. May collect charge vouchers and cash for service and keep record of transactions. May be designated according to type of order handled as Telephone-Order Clerk, Drive-In (hotel & rest.); Telephone-Order Clerk, Room Service (hotel & rest.)." 1991 WL 671794.

Moreover, the VE was aware of all of Plaintiff's limitations when she testified that he could complete the requirements of these jobs. "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4P, 2000 WL 1898704 at *3. Here, the VE testified that Plaintiff can perform the identified jobs, despite his limitations. The VE's testimony that Plaintiff can perform the identified jobs constitutes substantial evidence supporting the Commissioner's decision to deny benefits. *See Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007) (unpublished) ("The VE was aware of Mr. Segovia's limitations on overhead reaching, and he testified both that she could perform the jobs he identified and that his opinion of the jobs open to her was consistent with the DOT's specifications. . . . In these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case."); *see also Tollett v. Barnhart*, 60 F. App'x 263 (10th Cir. 2003) (unpublished) ("The vocational expert did not suggest that exhaust fumes would preclude Tollett from performing as a gate guard. To the contrary, she included the gate guard job as one that could be performed by someone who needed 'to avoid exposure to chemical fumes, perfumes, and other such types of pulmonary irritants.' Therefore, the vocational expert's testimony provided a proper basis for the ALJ's disability decision."); *Newburn v. Barnhart*, 62 F. App'x 300 (10th Cir. 2003) (unpublished) ("[t]he ALJ directly addressed the issue of whether the designated jobs could be performed with the specified limitation on hours of standing or walking. In response to the ALJ's

19

questions, the vocational expert answered that 'those jobs would accommodate the inability to stand more than four hours.'" Thus, "[t]he Commissioner met her step-five burden of proving that there are sufficient jobs in the national economy for a hypothetical person with the claimant's impairments."); *Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990) ("The ALJ properly relied on the testimony of a vocational expert that plaintiff had the residual functional capacity for a limited range of light work and there were jobs he could perform. This testimony is substantial evidence supporting the ALJ's conclusion that plaintiff was not disabled.").

### 4. *The VE and ALJ reasonably relied upon the DOT.*

Plaintiff's final argument appears to attack the VE and ALJ's reliance on the DOT itself. In support of this argument, Plaintiff again relies on authority from the Seventh Circuit. *See Doc. 22* at 20. Specifically, Plaintiff cites to *Dimmett v. Colvin*, 816 F.3d 486 (7th Cir. 2016). In *Dimmett*, Judge Posner expressed dissatisfaction with the VE and ALJ's reliance on the "obsole[te]" DOT, opining that perhaps the Commissioner ought to rely on the more up to date O*NET for job descriptions. *See id.* at 489. However, as Judge Posner observed, the Administration has not endorsed the O*NET "and in fact is developing its own parallel classification system." *Id.* While this system "is not expected to be rolled out for at least three more years," Plaintiff has cited to nothing indicating that the VE's reliance on the DOT is impermissible in the Tenth Circuit. To the contrary, the regulations explicitly list the DOT as an example of a publication from which the administration will take administrative notice of job data. *See* SSR 00-4p, 2000 WL 1897804 at *2; *see also* 20 C.F.R. §§ 404.1566(d), 416.966(d); *see also Gibbons v.*

*Barnhart*, 85 F. App'x 88, 93 (10th Cir. 2003) (unpublished) ("Once the VE stated that [s]he was relying on the DOT, the ALJ had no further duty to investigate.").

## IV.    Conclusion

Plaintiff fails to demonstrate that the ALJ committed reversible error in this case. Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion to remand (*Doc. 22*) be **denied**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES CHIEF MAGISTRATE JUDGE